**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| TAZMINA VERJEE-VAN,<br><br>                  Appellant,<br><br>      v.<br><br>PIERCE COUNTY, a subdivision of the State of Washington; and PLANNING AND LAND SERVICES DEPARTMENT (PALS), a department of Pierce County,<br><br>                Respondents. | No. 48947-3-II<br>(Linked with No. 49329-2-II)<br><br>UNPUBLISHED OPINION |

BJORGEN, C.J. — Tazmina Verjee-Van[1] appeals from a bench trial dismissal of her petition for a writ of mandamus requesting the removal of a pier from adjacent property on one side of her lot and a fence from adjacent property on the other. She argues that the superior court improperly dismissed her mandamus action because (1) Pierce County (County) had a clear duty to act under the circumstances of this case, (2) Verjee-Van had no plain, speedy, and adequate remedy in the ordinary course of law, and (3) review of the structures that she claims are in violation of the Pierce County Code are not precluded under the doctrine of finality. The County also (4) requests costs on appeal in the event it is the substantially prevailing party.

We hold that the superior court properly dismissed Verjee-Van's petition for a writ of mandamus and that the County is entitled to appellate costs as the substantially prevailing party on review. Consequently, we affirm the superior court.

---

[1] Tazmina Verjee-Van is also referred to in the record as Tazmina Esmail.

FACTS

A.    <u>Borgert Pier</u>[2]

At some point before or during April 1998, Kelly Winne and Julie Helmka-Winne[3] constructed a pier on their Lake Tapps property without acquiring a shoreline exemption or submitting an application for permit.  Soon after, the property owners submitted a request for a shoreline exemption and an application for a building permit for the pier as constructed.  On June 22, the County issued a building permit for the pier, with the permit becoming final on July 9.  On June 13, 2001, the County approved the requested shoreline exemption for the pier.  The building permit and shoreline exemption were never appealed.  On December 29, 2003, Neil Borgert purchased the property from Winne and Helmka-Winne.

B.    <u>Verjee-Van Activity</u>

On May 1, 1999, Verjee-Van purchased a lot bordered on one side by what would eventually be the Borgert lot and on the other side by a lot that would eventually be owned by Dan and Phyllis Abercrombie.  All three lots are on the shoreline of Lake Tapps.  Prior to purchasing the property, Verjee-Van inspected the location, observed the Borgert pier constructed on the Winne/Helmka-Winne property, and filed a complaint with the County regarding the alleged improper installation of the pier.  Although no action was apparently taken on her complaint regarding the pier, Verjee-Van purchased the property.

On November 8, 2006, Verjee-Van sought a shoreline exemption in order to construct an 8-foot by 30-foot pier on her property.  On February 20, 2007, the County denied the requested

---

[2] In the record, the words "dock" and "pier" are used interchangeably.

[3] Julie Helmka-Winne is also referred to in the record as "Julie Winne."  Additionally, in some records "Helmka" is spelled as "Helmke."

exemption because the proposed construction was not in compliance with the Pierce County

Code (PCC). Despite the lack of a permit or exemption, Verjee-Van constructed a pier on her

property on or about May 12, 2007. The Verjee-Van pier was constructed within 10 feet of the

side boundary of her lot and "actually crossed over on top of Mr. Borgert's [pier]." Clerk's

Papers (CP) at 33. On July 3, 2007 the County sent a notice and order to correct to Verjee-Van,

explaining that the pier violated PCC 20.56.030.A.1.C.(4)[4] because it had been built within 10

feet of a side property line.

On July 17, Verjee-Van appealed the notice and order to the Pierce County hearing

examiner. On November 5, the examiner determined that Verjee-Van had failed to demonstrate

that the July 3 notice and order was clearly erroneous and ordered Verjee-Van to remove her

pier. Verjee-Van did not appeal the examiner's ruling.

C.     Abercrombie Fence

On April 2, 2012, Verjee-Van filed a complaint regarding a fence constructed by her

other next-door neighbors, the Abercrombies. She claimed that the Abercrombie fence was

constructed within the 15-foot shoreline setback area. On June 4, Yvonne Reed, a county code

enforcement supervisor, e-mailed Verjee-Van in response to the complaint, stating that the

Abercrombie fence did not violate the PCC. No party appealed the County's determination that

the Abercrombie fence did not violate PCC requirements.

D.     Verjee-Van's Petition for Writ of Mandamus

On June 23, 2014, Verjee-Van filed a petition for a writ of mandamus in superior court,

maintaining that the Borgert pier and the Abercrombie fence violated the PCC. She further

---

[4] "(4) Floats, piers, and docks shall be located not closer than ten feet to a side property line
except for docks intended for joint use."

alleged that the County had "a clear duty to follow the law," and sought a writ of mandamus to compel the County to "direct the immediate removal of such structures." CP at 8-9. On March 25, 2015, the mandamus case was stayed pending a decision on Verjee-Van's application for a permit to construct a pier on her property.

On March 30, 2016, the superior court filed its decision lifting the stay on these proceedings and dismissing the petition for a writ of mandamus. The court ruled that even if the Borgert pier and Ambercrombie fence violated the PCC, the code did not require the County to seek removal of those improvements. The court further determined that Verjee-Van would have had a plain, speedy, and adequate remedy in the ordinary course of law if she had appealed the County's determinations regarding the Borgert pier and Abercrombie fence.

On April 13, Verjee-Van filed a notice of appeal with our court, appealing the March 30, 2016 superior court decision dismissing her petition for a writ of mandamus.

ANALYSIS

I. STANDARD OF REVIEW

Our review of a decision regarding a writ of mandamus is subject to two standards of review, depending on the question examined. *Cost Mgmt. Servs., Inc. v. City of Lakewood*, 178 Wn.2d 635, 648-49, 310 P.3d 804 (2013). First, we review de novo whether "a statute specifies a duty such that mandamus may issue," as a question of law. *Id*. at 649. Second, we review "'[w]hether there is a plain, speedy, and adequate remedy in the ordinary course of the law,'" for an abuse of discretion as a question of fact. *Id*. (quoting *River Park Square, LLC v. Miggins*, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001)). A court abuses its discretion if its decision is manifestly unreasonable or rests on untenable grounds or untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable

reasons if it rests on facts unsupported by the record or was reached by applying the wrong legal standard. *Id*. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, reaches an outcome that is outside the range of acceptable choices, such that no reasonable person could arrive at that outcome. *Id*.

Verjee-Van argues that the superior court "treated the County's motion to dismiss as a motion for summary judgment," and that therefore our review should be exclusively de novo. Br. of Appellant at 6. She cites no authority for this proposition. A court has discretion to have any material question of fact resolved by a jury in a mandamus case. RCW 7.16.210. In the absence of material issues of fact, the court may decide the matter on argument by the parties. RCW 7.16.250. Therefore we review the superior court's denial of the mandamus under the two-part standard of review articulated above.

## II. THE PRESENCE OF A PLAIN, SPEEDY, AND ADEQUATE REMEDY AT LAW REQUIRES DISMISSAL OF THE MANDAMUS ACTION

In *Eugster v. City of Spokane*, we held that an applicant for a writ of mandamus must prove three elements. 118 Wn. App. 383, 402, 76 P.3d 741 (2003). First, the party that is the subject or target of the writ must be under a clear duty to act. *Id*. Second, the applicant must have no plain, speedy, and adequate remedy in the ordinary course of law. *Id*. Third, the applicant must be beneficially interested. *Id*. In this case, the parties dispute the first and second elements, the duty to act and the lack of an adequate remedy in the ordinary course of law. The party seeking a mandamus bears the "burden of proving all three elements justifying mandamus." *Id*. at 403.

Verjee-Van claims that she did not have a plain, speedy, and adequate remedy in the ordinary course of law. In a mandamus action, for a remedy to be inadequate "'[t]here must be something in the nature of the action that makes it apparent that the rights of the litigants will not

5

be protected or full redress will not be afforded without the writ [of mandamus].'" *Eugster*, 118

Wn. App. at 414 (quoting *City of Kirkland v. Ellis*, 82 Wn. App. 819, 827, 920 P.2d 206 (1996)).

The *Eugster* court reasoned that "the remedy issue turns on whether the duty the plaintiff seeks

to enforce 'cannot be directly enforced' by any means other than mandamus." *Id*. (quoting *Bd.*

*of Liquidation v. McComb*, 92 U.S. 531, 536, 23 L. Ed. 531 (1875)). The United States Supreme

Court has also reasoned that

> [t]he general principle which governs proceedings by *mandamus* is, that whatever
> can be done without the employment of that extraordinary remedy, may not be done
> with it. It only lies when there is practically no other remedy.

*Ex parte Rowland*, 104 U.S. 604, 617, 26 L. Ed. 861 (1881).

Under PCC 1.22.090A, "[a]ny person aggrieved, or any officer, department, board,

agency, district or bureau of the County or State affected by any final decision of an

administrative official, as set forth in PCC 1.22.080B, may file a notice of appeal," to have a

dispute heard by a hearing examiner. PCC 1.22.080B.1.f and g, respectively, include disputes

relating to applications for permits under the County's Shoreline Management Use Regulations

and "[a]ppeals from any final administrative order or decision related to the administration,

interpretation or enforcement of the Pierce County Code" among matters the hearing examiner is

authorized to decide.

On June 12, 2001, the County approved the shoreline exemption allowing the Borgert

pier. Verjee-Van could have appealed this determination to the hearing examiner under PCC

1.22.090B, but she did not. Similarly, Verjee-Van could have appealed the County's June 4,

2012 rejection of her complaint about the Abercrombie fence to the examiner, but she did not.

Had Verjee-Van appealed the County's determinations regarding the Borgert pier and the

Abercrombie fence, the hearing examiner would have been able to afford her plain, speedy, and

6

adequate relief had she prevailed in that adjudication. Under PCC 1.22.090H, "[t]he Examiner may reverse or affirm, wholly or in part, or may modify the Administrative Official's order, requirement, decisions or determination." Given these broad powers, the examiner would have had authority to order the removal of the Borgert pier and Abercrombie fence, if illegal. Indeed, in Verjee-Van's 2007 appeal before the examiner, the examiner ordered Verjee-Van to remove her pier because the examiner found that it violated PCC requirements.

That these are prior remedies makes no difference. In *Bock v. State*, 91 Wn.2d 94, 95, 586 P.2d 1173 (1978), Bock filed a petition for a writ of mandamus to compel the state Board of Pilotage Commissioners (Board) to issue a pilot license after the Board determined that he failed his pilot examination. In holding mandamus unavailable, the court explained:

> [T]he statutes governing the extraordinary writs of mandamus and prohibition allow the issuance of those writs only "where there is not a plain, speedy[,] and adequate remedy in the ordinary course of law." Appellant's loss of the remedy provided by the APA [Administrative Procedure Act] through failure to file a timely petition for review *does not render that remedy inadequate, or give rise to a right to extraordinary writs*. Therefore, if APA review was available, the extraordinary writs are not.

*Id*. at 98 (emphasis added) (internal citations omitted) (quoting RCW 7.16.170, .300). Similarly, in considering whether a party may seek a writ of mandamus because an otherwise available cause of action was precluded due to the statute of limitations, our Supreme Court held:

> The fact that relator has slept upon her rights, and permitted the period to lapse in which she could have brought an action for damages, thus depriving herself of a legal right, does not protect her in seeking to make use of mandamus to obtain the same relief for which, *had she proceeded in time*, her right in law would have been ample.

*State v. City of Spokane*, 92 Wash. 667, 669, 159 P. 805 (1916) (emphasis added).

Because she had a plain, speedy, and adequate remedy in the ordinary course of law, the superior court did not abuse its discretion by determining that Verjee-Van was not entitled to a

writ of mandamus. With this resolution, we need not consider whether the other necessary elements of a mandamus action are present.

### III.  ALLOWING VERJEE-VAN TO OBTAIN A WRIT OF MANDAMUS AFTER FAILING TO PURSUE ADEQUATE REMEDIES WOULD OFFEND PRINCIPLES OF FINALITY IN LAND USE LAW

Verjee-Van argues that the trial court erred in its reliance on principles of finality in dismissing her petition for mandamus. She argues that because the county administrative decisions against her were not final, she could not have appealed them to the hearing examiner and thus had no adequate remedy to pursue. She also argues that the general principles of finality in land use law do not preclude her mandamus action. We disagree.

Agency action is final "'when it imposes an obligation, denies a right, or fixes a legal relationship as a consummation of the administrative process.'" *Evergreen Washington Healthcare Frontier LLC v. Dep't of Soc. & Health Servs.*, 171 Wn. App. 431, 449, 287 P.3d 40 (2012) (internal citations omitted) (quoting *Wells Fargo Bank, N.A. v. Dep't of Revenue*, 166 Wn. App. 342, 356, 271 P.3d 268 (2012)). Our Supreme Court has stated that "[a] final agency action 'implies a definitive act of the agency, action which is binding until and unless it is set aside by a court.'" *Jones v. Dep't of Health*, 170 Wn.2d 338, 357, 242 P.3d 825 (2010) (quoting Charles H. Koch, Jr., ADMINISTRATIVE LAW AND PRACTICE § 13.20, at 335 (2d ed. 1997)). Our Supreme Court has also explained that "'[a] letter from an agency will constitute a final order if the letter clearly fixes a legal relationship as a consummation of the administrative process,'" but only if the letter is clearly understandable as a final determination of rights. *Smoke v. City of Seattle*, 132 Wn.2d 214, 222, 937 P.2d 186 (1997) (internal quotations marks omitted) (quoting *Valley View Indus. Park v. City of Redmond*, 107 Wn.2d 621, 634, 733 P.2d 182 (1987)).

In this case, the 2001 approval of the shoreline exemption for the Borgert pier and the 2012 e-mail to Verjee-Van regarding the Abercrombie fence each constituted final agency actions that could have been appealed. County records show that a shoreline exemption was approved on June 13, 2001 for what would eventually be Borgert's "5 x 24 as built [pier]." CP at 52. The County's approval of the exemption request indicates that the County determined that the pier comported with applicable county regulations. Additionally, the 2012 e-mail to Verjee-Van plainly stated that the County had determined that the Abercrombie fence did not violate the PCC and that the County would not be taking further action with respect to the fence. Although Verjee-Van points out that "no authority exists to suggest that a final decision could be issued by way of an e[-]mail communication," she does not cite any authority suggesting that such a communication is otherwise improper. Br. of Appellant at 16. To the contrary, because an agency letter may constitute a final agency action, *Smoke*, 132 Wn.2d at 222, the mere assertion that an agency e-mail cannot be a final agency action is unpersuasive. Because the 2001 shoreline exemption and the 2012 e-mail regarding the Abercrombie fence each communicated a definitive act of an agency fixing a legal relationship, each act was a final administrative action that Verjee-Van could have appealed.

A more general application of principles of finality also supports the superior court's decision. In *Chelan County v. Nykreim*, the County attempted to revoke land use decisions 14 months after they had been made because they had been erroneously approved. 146 Wn.2d 904, 914-915, 52 P.3d 1 (2002). Our Supreme Court held that even if the original land use decision was erroneous, the judicial "policy of finality of land use decisions," and the provisions of the Land Use Petition Act (LUPA), chapter 36.70C RCW, precluded further review of that decision

through a declaratory judgment action after the deadline for an appeal under LUPA had passed.

*Id.* at 932-33. The court explained that it has:

> [R]ecognized a strong public policy supporting administrative finality in land use decisions. In fact, this court has stated that "if there were not finality [in land use decisions], no owner of land would ever be safe in proceeding with development of his property. . . . To make an exception . . . would completely defeat the purpose and policy of . . . making a definite time limit."

*Id.* at 931-32 (alterations in original) (quoting *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 181-82, 4 P.3d 123 (2000)).

A final local government decision on a request for a shoreline exemption may be challenged under LUPA, *Department of Ecology v. City of Spokane Valley*, 167 Wn. App. 952, 964, 275 P.3d 367 (2012), as may a final interpretive decision such as the County's decision on the Abercrombie fence. RCW 36.70C.020(2)(c). Consequently, the same policies favoring finality in *Nykreim* are also at play in this setting.

Therefore, because the County issued final land use decisions regarding the Borgert pier and the Abercrombie fence, those decisions may not be reviewed in the absence of a timely appeal under these principles of finality. Verjee-Van appealed neither the shoreline exemption permit regarding the Borgert pier nor the County determination of compliance regarding the Abercrombie fence. As such, the superior court properly determined that none of the alleged errors associated with these two improvements could be reviewed under the principles of finality applicable to land use decisions.[5]

---

[5] Because we hold that Verjee-Van has not demonstrated that she is entitled to a writ of mandamus, we do not reach the question of whether relief by writ of mandamus may be inconsistent with the doctrine of finality.

III. APPELLATE COSTS

The County requests costs on appeal as the prevailing party under RAP 14.2. Based on our analysis above, the County is the substantially prevailing party in this appeal and is entitled to costs under RAP 14.2 and RAP 14.3.

CONCLUSION

Verjee-Van was not entitled to a writ of mandamus because she had plain, speedy, and adequate remedies to challenge the actions she complains of and because allowing her to obtain a writ after failing to pursue those remedies would offend principles of finality in land use law. Therefore, we affirm the superior court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

MELNICK, J.

SUTTON, J.

11