[No. 63615-0. En Banc.]

Argued June 12, 1996.    Decided May 22, 1997.

LARRY G. SMOKE, ET AL., *Petitioners*, v. THE CITY OF SEATTLE, *Respondent*.

SANDERS, J., did not participate in the disposition of this case.

*Groen & Stephens*, by *John M. Groen*, for petitioners.

*Mark H. Sidran, City Attorney*, and *Judith B. Barbour* and *Robert D. Tobin, Assistants*, for respondent.

*Victor J. Wolski* and *Robin L. Rivett* on behalf of Pacific Legal Foundation, amicus curiae.

MADSEN, J. — This case requires us to examine the application of the statutory requirement in RCW 64.40 for exhaustion of administrative remedies to a municipal land use ordinance. We decide that a site interpretation as set forth in Seattle Municipal Code (SMC) 23.88.020 does not provide an available administrative remedy from the nonappealable denial of a Type I land use permit. We further hold RCW 64.40 impliedly authorizes award of post-judgment interest.

## STATEMENT OF THE CASE

In 1989, Plaintiffs Larry G. Smoke, Jane C. Smoke, Dean

Quall, and Elizabeth Quall, operating as Smoke Quall, Inc., purchased four lots from Defendant City of Seattle (the City) with the plan to build a single family residence on each parcel. Although the lots were substandard in size, a city ordinance allowed a single family residence on a lot less than 5,000 square feet if platted prior to 1957 and not developed with a principal structure. Plaintiffs knew a rectifier, an electrical transformer of approximately 968 square feet, straddled Lots 1 and 2 as granted by the City in a recorded easement to the Municipality of Metropolitan Seattle (Metro).

In February or March 1990, Plaintiffs discovered the City's Department of Construction and Land Use (DCLU) had issued an opinion letter to Metro in 1988 (Metro letter) deeming the rectifier merged Lots 1 and 2 into a single building site. On March 6, 1990, Plaintiffs sent a letter to the City disputing the Metro letter's conclusions and claiming the rectifier did not qualify as a principal structure. When the City did not respond by April 1990, Plaintiffs applied for a master use permit (MUP) for each lot, establishing its use for a single family residence, and for building permits.

DCLU granted permits for Lots 3 and 4, but not for Lots 1 and 2. Between October 1990 and January 1991, the City zoning examiner issued three correction sheets repeating its position that the presence of the rectifier prohibited permitting for separate building sites. Directed to contact DCLU land use attorney William Mills, an attorney employed as a land use specialist and assigned to the interpretation section of the DCLU, Plaintiffs learned their MUPs for Lots 1 and 2 remained on hold because of the rectifier. Mills also informed Plaintiffs of their option to apply for a legal building site letter or a formal building site code interpretation. Neither a request for a building site letter nor a request for an interpretation of the director is a required component of a building permit application nor is it a condition precedent to obtaining a building permit.

On March 5, 1991, Plaintiffs' attorney sent Mills a letter reiterating his clients' position that Lots 1 and 2 qualified as separate sites and criticizing as unlawful DCLU's refusal to issue the permits. On April 5, 1991, Mills responded with an informal building site letter (Mills letter) again explaining DCLU's determination that the rectifier constituted a principal structure merging Lots 1 and 2. Mills concluded:

> This letter represents the DCLU position regarding the development potential of the property . . . . It is not an appealable legal determination. If you wish to challenge the DCLU determination, you may request a formal legal building site interpretation, which is appealable to the Seattle Office of the Hearing Examiner . . . .

Ex. 6.

On April 29, 1991, Plaintiffs filed suit seeking a writ of mandamus and claiming damages on four bases: injury from the delay in permitting under RCW 64.40.020; violation of substantive due process under 42 U.S.C. § 1983; inverse condemnation; and interference in a business expectancy. In December 1991, Plaintiffs moved for summary judgment to compel DCLU to issue the permits. The City then changed its position and announced the rectifier did not prevent issuance of permits for Lots 1 and 2 as separate building sites. On May 5, 1992, the City issued the requested permits. Plaintiffs' damage claims proceeded to mandatory arbitration, and Plaintiffs succeeded in obtaining an award of $9,066.69 plus attorney fees.

The City appealed the arbitration award in a trial de novo. The parties stipulated damages of $9,066.69 should the trial court find the City liable. On August 18, 1993, the trial court found the City liable under RCW 64.40.020 because DCLU should have known its denial of the permits was unlawful and said unlawful action proximately caused injury by delaying issuance of the permits from April 5, 1991, to December 1991. Plaintiffs received a judgment for the stipulated damages plus attorney fees.

The trial court dismissed Plaintiffs' claims for a 42 U.S.C. § 1983 violation, inverse condemnation, and interference in a business expectancy.

The City appealed, arguing Plaintiffs failed to exhaust all administrative remedies as mandated by RCW 64.40-.030. *See Smoke v. City of Seattle*, 79 Wn. App. 412, 902 P.2d 678 (1995). Plaintiffs cross-appealed, seeking post-judgment interest. Although Plaintiffs neglected to assign error in their notice of appeal to the dismissal of their remaining claims, Plaintiffs' brief also urged the Court of Appeals to affirm judgment on the alternative basis of 42 U.S.C. § 1983. *See Smoke*, 79 Wn. App. at 421.

Deciding Plaintiffs failed to exhaust administrative remedies and waived error on the 42 U.S.C. § 1983 claim, the Court of Appeals reversed the trial court judgment. *See Smoke*, 79 Wn. App. at 421-22. The Supreme Court granted Plaintiffs discretionary review. We now reverse and reinstate Plaintiffs' damages award, plus attorney fees and postjudgment interest. Because we decide this case under RCW 64.40, we do not reach Plaintiffs' 42 U.S.C. § 1983 theory.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The primary issue in this case concerns whether the doctrine of exhaustion of administrative remedies precluded Plaintiffs' damages claim for the City's denial of their Type I MUP. The City contends that before Plaintiffs could file an RCW 64.40 claim for damages they were required to exhaust all administrative remedies which included obtaining a "director's interpretation." Since Plaintiffs did not seek an interpretation before filing a RCW 64.40 claim, the City argues that their claim was barred.

To determine whether Plaintiffs failed to exhaust their administrative remedies, we will examine two questions. First, we must determine whether exhaustion is required as a condition precedent to an RCW 64.40.020

damages action. Second, we will examine whether an interpretation provides an adequate administrative remedy for a Type I MUP denial. Although we conclude RCW 64.40.030 requires the exhaustion of administrative remedies, we hold an interpretation does not constitute an adequate administrative remedy for a Type I MUP denial.

We turn first to whether exhaustion is required before filing a RCW 64.40 claim. In 1982, the Legislature amended RCW 64.40 to provide a new cause of action for property owners aggrieved by a land use permitting decision.

> Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within time limits established by law: PROVIDED, That the action is unlawful or in excess of lawful authority only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.

RCW 64.40.020(1). The pivotal provision is the statute's limitation section which provides:

> Any action to assert claims under the provisions of this chapter shall be commenced only within thirty days after all administrative remedies have been exhausted.

RCW 64.40.030.

The Court of Appeals properly rejected Plaintiffs' assertion that RCW 64.40 does not impose an exhaustion requirement but rather serves only as a limitations provision. On its face, RCW 64.40.030 unambiguously imposes an exhaustion prerequisite to damages actions. The plain language "after all administrative remedies have been exhausted" expresses no meaning other than an exhaustion requirement. RCW 64.40.030.

Moreover, the legislative history clearly indicates that

RCW 64.40.030 was not intended to serve simply as a limitations provision but that it also required exhaustion before a claim could be filed. The Legislature amended the statute's original provision from solely a statute of limitations provision to provide the present exhaustion language.[1]

■■ We next turn to the SMC to ascertain whether any unexhausted administrative remedy existed for a Type I MUP denial. No exhaustion requirement arises, however, without the issuance of a final, appealable order. *See Valley View Indus. Park v. City of Redmond*, 107 Wn.2d 621, 634, 733 P.2d 182 (1987). Thus, we must first determine whether the Mills letter constituted a final decision by the City. The City suggests the Mills letter merely served as another informal correction sheet and identifies as the final, Type I decision DCLU's issuance of the MUPs following Plaintiffs' mandamus action. We disagree and conclude the Mills letter constituted the final Type I decision.

■ As this court has previously explained, an informal agency letter may suffice as a final decision for the purposes of exhaustion:

> A letter from an agency will constitute a final order if the letter clearly "fixes a legal relationship as a consummation of the administrative process." Such a letter must be so written as to be clearly understandable as a final determination of rights . . . . [D]oubts as to the finality of such communications must be resolved in favor of the citizen.

*Valley View*, 107 Wn.2d at 634; *see also Bock v. State Bd. of Pilotage Comm'rs*, 91 Wn.2d 94, 99, 586 P.2d 1173 (1978); *Ventures N.W. Ltd. Partnership v. State*, 81 Wn. App. 353, 367, 914 P.2d 1180 (1996). The language of the Mills letter explicitly acknowledges that the City had made a final determination. "This letter represents the DCLU po-

---

[1]*See* Sub. H.B. 1006, 47th Leg. (1982) (read Jan. 25, 1982); S. Comm. Amend. to Sub. H.B. 1006 by Comm. on Judiciary.

sition regarding the developmental potential of the property at 906-910 Martin Luther King Jr. Way. It is not an appealable legal determination." Ex. 6. The Mills letter constitutes a final decision.

Plaintiffs may seek a claim under RCW 64.40, however, only if they have exhausted all available administrative remedies. In the present case the Plaintiffs were denied a Type I MUP pursuant to the SMC. The SMC lays out a detailed scheme of procedures for various land use decisions:

> Land use decisions are classified into five (5) categories based on the amount of discretion and level of impact associated with each decision. Procedures for the five (5) different categories are distinguished according to who makes the decision, the type and amount of public notice required, and whether appeal opportunities are provided.

SMC 23.76.004(A). The SMC classifies MUPs into three types of decisions. While Type II and III decisions are discretionary and appealable to a hearing examiner, Type I decisions "are nonappealable decisions made by the Director which require the exercise of little or no discretion." SMC 23.76.004(B). The parties here both categorize the desired MUPs, to establish use of the lots as single family residences, as a Type I decision. The City thus concedes a Type I MUP denial lacks any direct avenue of appeal.

Although the denial of a Type I MUP is "nonappealable" the City contends that an interpretation is an administrative remedy that must be exhausted before a RCW 64.40 claim is sought. An interpretation "may be requested in writing by any person or may be initiated by the Director." SMC 23.88.020(A). An interpretation is "[a] decision by the Director as to the meaning, application or intent of any provision of Title 23, Land Use Code, or Title 24, Zoning and Subdivisions, as it relates to a specific piece of property." SMC 23.88.020(A).

Generally, if an administrative proceeding can alleviate

the harmful consequences of a governmental activity at issue, a litigant must first pursue that remedy before the courts will intervene. *See Simpson Tacoma Kraft Co. v. Department of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). The doctrine applies in cases where a claim is originally cognizable by an agency which has clearly defined mechanisms for resolving complaints by aggrieved parties and the administrative remedies can provide the relief sought. *See State v. Tacoma-Pierce County Multiple Listing Serv.*, 95 Wn.2d 280, 284, 622 P.2d 1190 (1980); *Retail Store Employees Union v. Washington Surveying & Rating Bureau*, 87 Wn.2d 887, 906-07, 909, 558 P.2d 215 (1976); *Kreager v. Washington State Univ.*, 76 Wn. App. 661, 664, 886 P.2d 1136 (1994); *Beard v. King County*, 76 Wn. App. 863, 870, 889 P.2d 501 (1995).

This court has excused exhaustion where there was doubt as to whether the agency was empowered to grant effective relief. *See Citizens for Clean Air v. City of Spokane*, 114 Wn.2d 20, 31, 785 P.2d 447 (1990). For example, an agency, as a preliminary matter, may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute. *See Rettkowski v. Department of Ecology*, 122 Wn.2d 219, 234, 858 P.2d 232 (1993) (exhaustion was not required where the Pollution Control Hearings Board had no authority to adjudicate water rights); *Tacoma-Pierce*, 95 Wn.2d at 284 (exhaustion not required where violations of the Consumer Protection Act were not cognizable by either the Department of Licensing or the Real Estate Commission but rather by the courts); *Zylstra v. Piva*, 85 Wn.2d 743, 745, 539 P.2d 823 (1975) (excusing exhaustion when applicability of statute or contract giving remedy was at issue); *Schreiber v. Riemcke*, 11 Wn. App. 873, 875, 526 P.2d 904 (1974) (where issues raised involve the constitutionality of the acts of the county assessor exhaustion was not required).

Alternatively, a court may relieve a person from exhaus-

tion where an agency is competent to adjudicate the issue presented, but the administrative remedy cannot grant the type of relief requested. *See McCarthy v. Madigan*, 503 U.S. 140, 149-51, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) (notwithstanding substantial interests in favor of exhausting administrative remedies a federal prisoner who brought *Bivens* action (*Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1970)) seeking only money damages for violation of Eight Amendment rights was not required to exhaust administrative remedies where the grievance procedure presented significant procedural hurdles to assertion of claim and did not provide for award of money damages).[2] In the present case DCLU is the proper agency to issue or deny Type I MUP permits. The question then is whether an interpretation provides an adequate remedy from a Type I permit denial.

Although a remedy is not the precise relief sought, or will not give the litigant "complete relief," the remedy may be adequate for purposes of requiring exhaustion. *See Dioxin/Organochlorine Ctr. v. Department of Ecology*, 119 Wn.2d 761, 777, 837 P.2d 1007 (1992) (where the appellants sought both declaratory and injunctive relief and the Pollution Control Hearings Board could grant declaratory relief and stay the agency order, relief was adequate). However, "[w]here there is no possible remedy at all there can scarcely be a failure to exhaust remedies." *Stevedoring Servs. of Am., Inc. v. Eggert*, 129 Wn.2d 17, 43, 914 P.2d 737 (1996) (Stevedoring did not fail to exhaust administrative remedies where the administrative law judge had no authority to order reimbursement under the Longshore and Harbor Workers' Compensation Act); *see also McNeese v. Board of Educ. for Community Unit Sch. Dist.*, 373 U.S. 668, 675, 83 S. Ct. 1433, 10 L. Ed. 2d 622 (1963) (students seeking to integrate public school need

[2]The Court of Appeals in *Smoke v. City of Seattle*, 79 Wn. App. 412, 902 P.2d 678 (1995) cited *McCarthy v. Madigan*, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) for the proposition that exhaustion is required regardless of whether the administrative remedies give rise to the end relief sought by a claimant. This statement is contrary to the rulings of this court. Additionally, the court cited to the portion of the Supreme Court opinion discussing the decision below which was ultimately overruled.

not file complaint with school superintendent because the "Superintendent himself apparently has no power to order corrective action" except to request the Attorney General to bring suit); *United States Alkali Export Ass'n v. United States Cal. Alkali Export Ass'n*, 325 U.S. 196, 210, 65 S. Ct. 1120, 89 L. Ed. 1554 (1945) (exhaustion not required where "the only function of the Federal Trade Commission under § 5 of the Webb-Pomerene Act is to investigate, recommend and report. It can give no remedy.")

■ An interpretation is not an adequate administrative remedy because it cannot provide the Plaintiffs with adequate relief, that is, a reversal of the Type I MUP denial. There is no indication from the SMC that the interpretation process can result in a reversal of a final MUP decision. One of the primary purposes of the doctrine to exhaust administrative remedies is to provide a more efficient process and allow the agency to correct its own mistakes. *See Citizens for Clean Air*, 114 Wn.2d at 30. An interpretation does not effectuate this purpose as it does nothing to change the status of the Plaintiffs' permit denial. Additionally, to require the Plaintiffs to proceed with an interpretation would cost the Plaintiffs time, effort, and money while leaving them in the same position from which they began. Thus, an interpretation provides no remedy for the Plaintiffs' situation and is not required for exhaustion.

The City also cites *R/L Assocs., Inc. v. City of Seattle*, 61 Wn. App. 670, 811 P.2d 971 (1991), arguing that an interpretation is an administrative remedy that must be exhausted. In *R/L Assocs.*, the Court of Appeals affirmed the trial court's determination that *R/L* was not entitled to a writ of mandamus to compel issuance of a building permit. The court held that *R/L* was not entitled to a writ of mandamus because it failed to show that it had a "clear right" to the permit. *Id.* at 674. The court's later discussion whether an interpretation is required for exhaustion is dicta. Additionally, in the court's discussion

there was some question as to whether the permit at issue in *R/ L Assocs.* was, in fact, a Type I permit. *See id.* at 675-76. We also note another Court of Appeals decision which discussed in dicta the interpretation procedure and stated that the procedure was not required for exhaustion. *See Kates v. City of Seattle,* 44 Wn. App. 754, 762, 723 P.2d 493 (1986). The court described an interpretation as a procedure that "provides a means by which . . . potential developers can discover DCLU's interpretation of the regulations before they apply for permits or begin construction." *Id.* (emphasis omitted). Thus, we do not find the Court of Appeals discussion in *R/ L Associates* concerning whether an interpretation is required for exhaustion purposes persuasive.

■ Moreover, the ordinance itself expressly states that Type I MUP decisions are nonappealable. *See* SMC 23.76-.004(B). No provision of the code suggests or requires that an applicant obtain an interpretation as an administrative remedy for a decision denying a Type I MUP application. The ordinance itself indicates that once the permitting decision has been made there are no other administrative remedies available. The administrative process must provide a "clearly defined" process for the resolution of complaints. *Tacoma-Pierce,* 95 Wn.2d at 284. The SMC does not indicate that an interpretation is part of the administrative appeals process for a Type I MUP decision; on the contrary, it "clearly" indicates that once a Type I decision has been made there is no available administrative appeal.

## PROXIMATE CAUSATION

Next the City argues that even if an interpretation did not impose a procedural barrier to Plaintiffs' RCW 64.40.020 claim, an interpretation constituted a prerequisite to a finding of liability for damages from the denial of their MUP. By the City's theory, Plaintiffs' choice to forgo interpretation, not the Mills letter, proximately caused their injury.

■ A plaintiff's voluntary or "business judgment" refusal to pursue a known legal remedy may save a defendant from liability by acting as the proximate cause of any damages. *King v. City of Seattle*, 84 Wn.2d 239, 251, 525 P.2d 228 (1974); *Grader v. City of Lynnwood*, 53 Wn. App. 431, 441-42, 767 P.2d 952 (1989). Yet interpretation provided no administrative remedy for a Type I MUP denial, placing Plaintiffs' failure to pursue that procedure outside the chain of causation. Likewise, without an exhaustion mandate for interpretation, Plaintiffs had no duty to mitigate their injury from the MUP denial through that procedure. *See King*, 84 Wn.2d at 251.

## POSTJUDGMENT INTEREST

■ ■ Having succeeded in reinstating their judgment of $9,066.69, Plaintiffs seek postjudgment interest. Although the City protests RCW 64.40 lacks an express waiver of sovereign immunity from postjudgment interest, by consenting to suit for damages from land use decisions the City impliedly waived immunity from the liabilities attendant to such claims. *Architectural Woods, Inc. v. State*, 92 Wn.2d 521, 526-27, 598 P.2d 1372 (1979). Plaintiffs are entitled to interest from the date of entry of judgment. RCW 4.56.110(3); *Architectural Woods*, 92 Wn.2d at 526-27. As the prevailing party, Plaintiffs also will receive reasonable attorney fees on review. RCW 64.40.020(2); *Cox v. City of Lynnwood*, 72 Wn. App. 1, 11-12, 863 P.2d 578 (1993).

## CONCLUSION

We conclude Plaintiffs were not required to seek an interpretation as provided in SMC 23.88.020 to exhaust their administrative remedies from a Type I MUP denial. An interpretation does not provide an adequate remedy for a Type I MUP denial because it cannot affect the status of the permitting decision. We further find that RCW 64.40 impliedly authorizes the award of postjudgment interest.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, AL-EXANDER, and TALMADGE, JJ., concur.